Juan **HUERTA-CABRERA**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE**, Respondent.

No. 71-1489.

United States Court of Appeals,
Seventh Circuit.

Argued May 15, 1972.

Decided Aug. 30, 1972.

Ralph M. Schelly, Chicago, Ill., for petitioner.

James R. Thompson, U. S. Atty., and Mary L. Spaciotti, John P. Lulinski, Asst. U. S. Attys., Chicago, Ill., Henry E. Petersen, Asst. Atty. Gen., George W. Masterson, Murray R. Stein, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before CUMMINGS, PELL and STEVENS, Circuit Judges.

PER CURIAM.

Petitioner Juan Huerta-Cabrera, a native and citizen of Mexico, seeks review of a final order of deportation issued against him in January 1971 by the Immigration and Naturalization Service. Petitioner challenges the validity of the deportation proceedings on the ground that the evidence against him was the "poisoned fruit" of an allegedly unconstitutional arrest by immigration officers.

In March 1970, petitioner entered the United States illegally by wading across the Rio Grande River. He eventually came to Chicago, Illinois. In August 1970, petitioner was arrested by immigration officers. That same day, after being informed in Spanish of his rights, he signed a sworn statement to an investigator of the Immigration and Naturalization Service confessing his illegal entry of March 1970 as well as prior illegal entries, two voluntary departures and one deportation. An immigration warrant of arrest was issued and served upon him as a basis for his detention for deportation proceedings. Petitioner was also served with an Order to Show Cause charging that he was deportable under 8 U.S.C. § 1251(a) (1) and § 1182(a) (17). Petitioner was then released under an immigration bond.

Subsequently, the Government instituted criminal proceedings against Huerta-Cabrera, and, on November 3, 1970, he pleaded guilty to having violated 8 U.S.C. § 1326. The district court sentenced him to two years in custody, suspended sentence, and placed him on probation for five years, with the condition that he be deported to Mexico and remain there until he gained permission to enter the United States legally.[1]

On December 28, 1970, the deportation hearing which is the subject of this appeal took place.

At that hearing, Huerta-Cabrera, through counsel, admitted, subject to a motion that the deportation proceedings be terminated because of claimed illegal arrest, that he was deportable as charged. He testified that he had entered the country illegally in March 1970 because he had lacked the documents required for a legal entry. Under cross-examination, he stated that he had entered the United States unlawfully two previous times. He also had once illegally remained in this country after the expiration of an employment contract. His immigration record disclosed that he had been granted the privilege of voluntary departure on two of those prior occasions.

The Special Inquiry Officer denied petitioner's motion to terminate the proceedings:

"The record clearly contains admissions by [Huerta-Cabrera] and other evidence which was not obtained as a result of any search or questioning of [him] during the period of his apprehension. Furthermore, [his] testimony, which he gave freely, without any claim of self incrimination, clearly establishes his deportability."

The officer also refused to grant the discretionary relief of voluntary departure. Basing his final decision on petitioner's admissions and on the documents entered into evidence at the hear-

---

1. 8 U.S.C. § 1326 provides:
"Any alien who—
(1) has been arrested and deported or excluded and deported, and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both. (June 27, 1952,

ch. 477, title II, ch. 8, § 276, 66 Stat. 229.)"
The Government points out that the case in which the petitioner pleaded guilty "was a direct result of the arrest being challenged in this case. The basis for that conviction is the ground for the deportation order herein being challenged (reentry without permission after being deported)."
The Government does not on this appeal rely on any admissions implicit in the guilty plea in the criminal case nor on the fact that one of the conditions of probation in the criminal case was that petitioner be deported. Inasmuch as consideration of these particular matters is not necessary because of the disposition we have otherwise reached, we have arrived at no conclusions with regard to them.

ing, the officer found Huerta-Cabrera deportable as charged in the Order to Show Cause.

The Board of Immigration Appeals affirmed the decision of the Special Inquiry Officer, holding that the petitioner's deportability had been established by "clear, convincing and unequivocal" evidence. Further, the petitioner had admitted the truthfulness of all the allegations in the Order to Show Cause why he should not be deported. The Board stated it could find nothing in the record to support Huerta-Cabrera's contention that his arrest in August 1970 had been illegal. It noted that "section 287(a) (2) of the Immigration and Nationality Act [8 U.S.C. § 1357(a) (2)] authorizes any agent of the Service to arrest any alien in the United States if he has reason to believe that the alien so arrested is in the United States in violation of law or regulation and is likely to escape before a warrant can be obtained." [2]

The transcript of the deportation hearing leaves us uncertain whether the presiding officer prevented petitioner's counsel from offering evidence about the allegedly unlawful arrest or whether counsel could have, but failed to, examine Huerta-Cabrera on this matter. Both parties to this appeal interpret the hearing officer's comments as a refusal to allow counsel to develop the circumstances surrounding the petitioner's arrest. If so, it might seem a fair construction that counsel was easily put off from pursuing a subject which seems to be the sole basis of this appeal.

In any event, the result is that the certified administrative record before us contains no specific evidence as to what occurred at the time petitioner was apprehended. All we have are petitioner's allegations in his brief filed with the Board of Immigration Appeals: [3]

"On or about August 27, 1970, respondent [the petitioner here] was arrested by agents of the Immigration & Naturalization Service while he was a passenger in an automobile of a friend, which was proceeding in a completely lawful manner. The arrest of the respondent was made without any warrant or process of law, and respondent had not committed any crime at the time of his arrest, nor were there any reasonable grounds for the immigration agents to believe that respondent had committed a crime."

Huerta-Cabrera's appellate brief repeats these same general allegations.

In addition to the fact that the record brought to us fails to show evidence that the arrest violated constitutional standards,[4] the record does include other evidence—substantial and untainted [5]—to support the findings and order of the Immigration and Natural-

2. *See also* Section 287(a) (1), 8 U.S.C. § 1357(a) (1):

"(a) Powers without warrant.

Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—

(1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States. . . ."

3. Huerta-Cabrera's petition invokes this court's jurisdiction under Section 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a). Subsection 1105a (a) (4), entitled "Determination upon administrative record," provides in pertinent part:

". . . the petition shall be determined solely upon the administrative record upon which the deportation order is based and the Attorney General's

findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive. . . ."

4. For a discussion of the constitutional ramifications of Section 287(a), 8 U.S.C. § 1357(a), *see* Note, Temporary Detentions of Aliens for the Purpose of Interrogation Are Subject to the Terry Doctrine, 72 Colum.L.Rev. 593 (1972).

5. Even if the arrest were illegal, the mere fact that the authorities got the "body" of Huerta-Cabrera illegally does not make the proceeding prosecuting him or deporting him the fruit of the poisoned tree. This would not be a case of the use of evidence seized during the course of an illegal arrest. See Vlissidis v. Anadell, 262 F.2d 398, 400 (7th Cir. 1959) ; Green v. United States, 460 F.2d 317 (5th Cir. 1972) ; United States v. Villella, 459 F.2d 1028 (9th Cir. 1972).

ization Service. Not only is there petitioner's testimony at the deportation hearing, but the documents [6] in evidence establish that petitioner had previously been deported from the United States and had not obtained permission to re-enter as required by Section 212(a) (17) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a) (17). See Klissas v. Immigration and Naturalization Service, 124 U.S.App.D.C. 75, 361 F.2d 529, 530 (1966); Vlissidis v. Anadell, 262 F.2d 398, 400 (7th Cir. 1959); Medeiros v. Brownell, 99 U.S.App.D.C. 396, 240 F.2d 634 (1957); Coelho v. Brownell, 99 U.S.App.D.C. 397, 240 F.2d 635 (1957). Cf. In re Moy Wing Yin, 167 F.Supp. 828, 830 (S.D.N.Y.1958).

The petitioner has now extended his admittedly illegal stay in this country two years beyond his apprehension and we perceive no merit in a continuance of that status. For the reasons hereinbefore set out, the deportation order is affirmed.

Affirmed.

6. Five of the documents in evidence do not involve statements taken or evidence received at the time of petitioner's arrest.

Huerta-Cabrera's sworn statement of August 27, 1970, does stem from his apprehension. We note that petitioner's counsel, at the deportation hearing, offered no objection to the admission into evidence of that statement. Petitioner therein admitted that he had entered the United States without inspection and without documentation for the purpose of employment.